*905 OPINION OF THE COURT
John M. Hunt, J.
I
Respondent, Joseph G., who is 13 years old, has moved to withdraw his admission to having committed an act which, were he an adult, would constitute the crime of robbery in the first degree, a designated felony act as defined by Family Court Act § 301.2 (8).
By petition filed on May 19, 2003 respondent is alleged to have committed acts which, but for his age, would constitute the crimes of robbery in the first degree, robbery in the second degree, robbery in the third degree, grand larceny in the fourth degree, criminal possession of stolen property in the fifth degree, menacing in the second degree, menacing in the third degree, and criminal possession of a weapon in the fourth degree.
On May 19, 2003 respondent and his parents appeared before the court. Because respondent was not represented by counsel the initial appearance upon the petition was adjourned until the following day (Family Ct Act § 320.2 [3]).[1] On May 20, 2003 respondent, his parents, and his retained counsel appeared before the court and the initial appearance upon the petition was conducted. At the conclusion of the initial appearance, respondent’s attorney advised the court that the respondent wished to withdraw his denial of the allegations in the petition and to enter an admission to having committed an act which would constitute robbery in the first degree under Penal Law § 160.15 (3), a class B felony and a designated felony act under article 3 of the Family Court Act.
In accordance with Family Court Act § 321.3 the court proceeded to advise respondent of his rights and of the consequences of entering an admission to some of the allegations in the petition. The court first inquired of respondent whether he had heard his attorney’s statement that he wished to withdraw his denial of the allegations and that he wished to admit to having committed an act which would constitute the crime of robbery in the first degree, to which the respondent replied ‘Yes.” The court then advised respondent that he did not have *906 to make such an admission and whether he understood that and respondent stated that he understood that. Respondent was advised that he had a right to have a trial, to have his attorney cross-examine witnesses called by the prosecutor, and that he would not be required to testify at that trial. Respondent was also informed that the presentment agency bore the burden of proving the allegations in its petition beyond a reasonable doubt. When the court asked respondent whether he understood these rights he replied “yes.” Respondent was informed of his right to testify at the trial and also that the court would not draw any inference against him should he decide not to testify, and the court told respondent that “if you admit to me [that] you committed this Robbery in the First Degree there won’t be a trial and I will be taking your word for it that you actually did this.” When asked whether he understood this, respondent replied “yes.”
The court then proceeded to advise respondent of the dispositional consequences which would flow from his making an admission. The court stated that “[i]f you admit that you committed a Robbery in the First Degree, you put yourself in the position where you could be placed away from your home for a period of up to 18 months.” Respondent was asked whether he understood this and he indicated “yes.”[2] Respondent was further advised that in addition to placement away from home the court had the option of placing him on probation or granting him a conditional discharge.
After advising respondent of his rights and the consequences of his proposed admission, the court addressed respondent’s parents and inquired, “is there anything I said to your son that you wish me to clarify for you or for him?” Respondent’s father stated “no” and his mother stated “[w] ell, I want him to understand that he’s pleading guilty to these cases. I mean, he’s being told what to do and if he didn’t do it, that he shouldn’t plead guilty, but if he did do it.” The court then stated that “I’m going to get to that point. I haven’t even asked him what happened yet, give me time. I just want to make sure [that] you’re understanding what’s happening and he understands that * * The court then asked respondent “[d]id you see the charges in the petition in this piece of paper that [defense counsel] has in his hand? Did you see what you are charged with?” and respondent stated “no.” The court then told *907 respondent to have a seat and speak with his attorney, noting that the court was under the impression that respondent’s attorney had already reviewed the charge, the proposed admission, and the consequences of that admission with respondent. The respondent’s father joined respondent and counsel at the table while counsel spoke with respondent.[3]
When respondent and his counsel completed their private discussion, the court resumed the proceedings. The court stated to respondent that “[t]he petition includes a number of charges which, if they are true, means [that] you committed acts that, if committed by an adult, are very serious felony charges.” Respondent was asked whether he understood this and he stated “yes.” The court then read the accusatory part of count two of the petition to respondent which charged robbery in the first degree and then asked respondent whether he understood exactly what he was charged with. When respondent indicated that he understood the charge, the court asked him “[w]hat did you do that makes you guilty of doing that?” and respondent stated that the victim “put the chain in my hand” and that he was with another person, Jamal J., at that time and Jamal had “a knife” that respondent was unaware of until Jamal “pulled it out” and pointed it at the victim. According to respondent, he did not approach the victim with the intention of robbing him but approached him with Jamal when Jamal asked the victim for a cigarette. Respondent indicated that when the victim replied to Jamal’s request for a cigarette with vulgarity, Jamal decided to rob the victim of his chain and he was present with Jamal during the robbery. Respondent stated that the victim put the chain in his hand and that he and Jamal fled from the scene of the incident together.
The court then reviewed the permissible dispositional options once again reminding respondent that robbery in the first degree “is a designated felony” and that “in this case it means that you would subject yourself to being placed away from your home for approximately 18 months.” When respondent was asked whether he understood that, he replied “yes.” The court also indicated that respondent could “be placed on probation for a period of two years,” and that “[y]ou also run the possibility, depending on the outcome of any later hearing, of restricted placement. You could be placed in restricted placement, meaning that you could actually be locked up in a facility [run] by the Office of Children and Family Services as a result of this.” *908 When respondent was asked whether he understood this, he replied “yes.” The court then accepted respondent’s admission to robbery in the first degree in satisfaction of the charges contained in the petition (Family Ct Act § 321.2 [3]),[4] and the proceeding was then continued for a dispositional hearing (Family Ct Act § 321.3 [3]). Pending the dispositional hearing the court paroled respondent from juvenile detention to the custody of his father, John G., under the specific conditions (Family Ct Act § 320.5 [1], [2]; 22 NYCRR 205.25). The court also directed that the Department of Probation conduct a predisposition investigation and report and that respondent submit to a psychological evaluation by the Family Court mental health services clinic prior to the date of the dispositional hearing (Family Ct Act § 351.1 [l]).[5]
On June 30, 2003 respondent, his parents, and his attorney appeared before the court along with the Assistant Corporation Counsel and the dispositional hearing was commenced. Dr. Mitchell Frank, a psychologist with the mental health services clinic, testified that the respondent had been interviewed by him and that he learned that respondent had been subjected to excessive corporal punishment in the home of his father since his parole by this court. In light of Dr. Frank’s testimony the respondent was removed from his father’s home pending further proceedings, and the Administration for Children’s Services was ordered to conduct a child protective investigation concerning the allegations of excessive corporal punishment (Family Ct Act § 1034 [1] [b]). On July 28, 2003 respondent and his parents appeared along with respondent’s original counsel and with respondent’s present counsel. Upon the mo *909 tion of respondent’s original counsel and upon the consent of respondent and his parents counsel was relieved and respondent’s present counsel was substituted (CPLR 321 [b] [2]). Respondent’s present counsel then requested a further adjournment of the hearing so that he could file this motion to withdraw respondent’s admission.
In support of his motion to withdraw his admission to having committed an act which would constitute the crime of robbery in the first degree, respondent contends that his original counsel did not properly advise him of the nature of his admission and of the consequences of that admission and that he was not provided with effective assistance of counsel.
While respondent argues that he should be permitted to vacate his admission based upon his constitutional and statutory rights to effective assistance of counsel, upon review of the record of this proceeding, this court finds that respondent should be permitted to withdraw his admission, but on grounds different than those asserted by respondent.
II
Family Court Act § 321.2 permits a respondent in a juvenile delinquency proceeding to enter an admission to all or some of the counts in a juvenile delinquency petition or to make an admission to a lesser included crime of one or more of the counts in the petition. It has been stated that “an admission to a juvenile delinquency petition should have the same force and effect as a plea of guilty to a criminal charge in a criminal case” (Matter of Daniel Richard D., 27 NY2d 90, 97 [1970], cert denied sub nom. Daniel Richard D. v County of Onondaga, 403 US 926 [1971]) and, as such, the acceptance of an admission by the court is subject to specific procedures set forth in the statute.
Family Court Act § 321.3 relates to the acceptance of an admission in a juvenile delinquency proceeding. That statute reads, in pertinent part, as follows:
“1. The court shall not consent to the entry of an admission unless it has advised the respondent of his right to a fact-finding hearing. The court shall also ascertain through allocution of the respondent and his parent or other person legally responsible for his care, if present, that (a) he committed the act or acts to which he is entering an admission, (b) he is voluntarily waiving his right to a fact-finding *910 hearing, and (c) he is aware of the possible specific dispositional orders.”
Where a respondent through his or her law guardian indicates that he or she wishes to enter an admission to one or more counts in a juvenile delinquency petition, the court must first advise respondent and his or her parent or guardian, if present, of the right to a fact-finding hearing, including advice as to the presentment agency’s burden of proof and respondent’s right not to testify and the court must ascertain that respondent is voluntarily waiving the right to a fact-finding hearing (Matter of Delmar C., 207 AD2d 998 [1994]; Matter of Timothy M., 225 AD2d 915, 916 [1996]; Matter of James D.H., 254 AD2d 290, 291 [1998]). If respondent indicates that he or she is voluntarily waiving a fact-finding hearing, the court must then fully and completely advise respondent and his or her parent of all of the possible dispositional alternatives available to the court (Matter of Anthony D., 205 AD2d 533 [1994]; Matter of Herbert RR., 214 AD2d 891, 892 [1995]; Matter of Efrain R., 228 AD2d 303, 304 [1996]; Matter of Harrison C., 239 AD2d 341 [1997]; Matter of LeJuane S., 247 AD2d 481, 482 [1998]).[6] Moreover, in addition to advising the parent or guardian of the child’s rights, the court must affirmatively allocate the parent or guardian “with regard to their understanding of any rights respondent may be waiving as a result of his [proposed] admission” (Matter of Derrick UU., 298 AD2d 654, 654 [2002]; see, Matter of Neftaly R., 283 AD2d 579, 580 [2001]; Matter of James T., 304 AD2d 864 [2003]; Matter of Christopher S., 305 AD2d 513 [2003]; Matter of Bruce K, 306 AD2d 479 [2003]). Finally, after respondent and his or her parent or guardian have been properly advised of their rights and the consequences of the proposed admission, the court is required to ascertain by a proper allocution that the respondent committed the act or acts to which he or she is admitting (Matter of Tiffany MM., 298 AD2d 728, 729 [2002]; Matter of Eric CC., 298 AD2d 632, 634 [2002]).
The requirements of Family Court Act § 321.3 (1) are “mandatory and nonwaivable” (Matter of Melvin A., 216 AD2d *911 227 [1995]; Matter of Florence V., 222 AD2d 991, 992 [1995]; Matter of Brandon M., 299 AD2d 966, 967 [2002]; Matter of Joshua HH., 299 AD2d 760 [2002]; Matter of Anthony S., 302 AD2d 531, 531-532 [2003]), and a failure to comply with the statute requires reversal of the dispositional order upon appeal.[7]
Upon review of the record of this proceeding, this court concludes that respondent should be permitted to withdraw his admission to committing acts which would constitute the crime of robbery in the first degree.
Robbery in the first degree under Penal Law § 160.15 (3), when committed by a person who is 13, 14, or 15 years of age, is a “designated felony act” within the meaning of Family Court Act § 301.2 (8) (e.g., Matter of Latisha S., 198 AD2d 62 [1993]; Matter of Jose M., 245 AD2d 173, 174 [1997], lv dismissed 92 NY2d 845 [1998]; Matter of Stephan F., 274 AD2d 584, 585 [2000]).[8] A finding that a respondent has committed a designated felony act, other than a designated class A felony act,[9] subjects that respondent to placement with the Office of Children and Family Services (OCFS) for “an initial period of three years” (Family Ct Act § 353.5 [5] [a] [i]), with initial placement in a secure facility “for a period set by the order, to be not less than six nor more than twelve months” (Family Ct Act § 353.5 [5] [a] [ii]), followed by placement “in a residential facility for a period set by the order, to be not less than six nor more than twelve months” (Family Ct Act § 353.5 [5] [iii]). The statute further provides that a respondent shall not be released from a secure facility by OCFS to a facility other than another secure *912 facility during the initial period of 6 to 12 months, and that a respondent may not be released from the residential facility to which he or she is transferred after the period of secure placement (Family Ct Act § 353.5 [5] [iv]).
The placement alternatives which arise out of a designated felony act finding are serious and material consequences of an admission which should be part of a court’s allocution of a respondent and his or her parent or guardian pursuant to Family Court Act § 321.3 (1) (c). In this case, the transcript of the proceedings in which respondent made his admission to committing an act of robbery in the first degree discloses that he was not advised of the potential consequences of his admission to that act, that is, he was not specifically advised that he could be restrictively placed in the custody of OCFS for a period of three years and that such a restrictive placement must include 6 to 12 months of placement in a secure facility followed by up to a year of placement in a residential facility. While the court made mention of a “restricted placement,” the court did not mention the secure placement authorized by statute, nor did the court advise respondent that he could be placed in OCFS custody for three years. The failure to advise respondent and his parents of these consequences is, standing alone, grounds to permit him to withdraw his admission in this case.
An additional factor which militates in favor of permitting the respondent to withdraw his admission to a designated felony act is the significant impact that such a finding may have on his future. While a person under the age of 16 is generally not responsible for criminal acts (Family Ct Act § 301.2 [1]; Penal Law § 30.00 [1]), except for juveniles between the ages of 13 and 15 who commit one or more juvenile offenses and may be prosecuted in the adult criminal system as a “juvenile offender” (CPL 1.20 [42]; see, Matter of Vega v Bell, 47 NY2d 543, 547 [1979]; see, Matter of Raymond G., 93 NY2d 531, 535 [1999]; People v Smith, 152 AD2d 56, 59 [1989]; People v Ravanell, 156 AD2d 935, 936 [1989]; People v Killeen, 198 AD2d 233 [1993], lv denied 82 NY2d 926 [1994]), all persons over the age of 15 may be prosecuted for criminal conduct. Where a criminal defendant who is a juvenile offender or who is between the ages of 16 and 19 is convicted of a crime, he or she may be eligible for youthful offender treatment under article 720 of the Criminal Procedure Law (CPL 720.10 [2]; see, Matter of Capital Newspapers v Moynihan, 71 NY2d 263, 268 *913 [1988]; People v Calderon, 79 NY2d 61, 64-65 [1992]).[10] However, the Criminal Procedure Law provides that a youth who has previously been adjudicated a juvenile delinquent in the Family Court by reason of the commission of a designated felony act as defined in the Family Court Act is not eligible for youthful offender treatment by a criminal court (CPL 720.10 [2] [c]; People v Negron, 160 Misc 2d 333, 335 [1994]; see, People v Torres, 238 AD2d 933, 934 [1997]), and such defendants are subject to being sentenced as adults upon conviction. Clearly, the loss of youthful offender eligibility in any future criminal prosecutions cannot be deemed a “collateral effect” of respondent’s admission to having committed a designated felony act, such as possible deportation arising from a conviction based upon a plea of guilty (People v Ford, 86 NY2d 397, 403 [1995]). Unlike deportation by immigration officials, the loss of youthful offender eligibility in a future criminal prosecution is not “a result peculiar to the individual’s personal circumstances” and the loss of youthful offender eligibility is a result which is within the control of the court system which may affect respondent in future judicial proceedings (id. at 403; see, Matter of Daniel H., 236 AD2d 874 [1997] [appeal from finding of juvenile delinquency based upon admission not moot because juvenile delinquency finding could be used in subsequent adult sentencing proceedings]).
“A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences” (People v Ford, 86 NY2d at 402-403; see, People v Harris, 61 NY2d 9, 19 [1983]; People v Gina MM., 40 NY2d 595, 597 [1976]), and in determining whether a respondent’s waiver of his or her rights is knowing, intelligent and voluntary, “[t]he trial court must assess a number of relevant factors, including the nature and terms of the agreement, the reasonableness of the bargain, and the age and experience of the accused” (People v Hidalgo, 91 NY2d 733, 736 [1998] [emphasis added]; People v Garcia, 92 NY2d 869, 870 [1998]). Here, no mention of the loss of youthful offender eligibility as a result of the admission to a designated felony act was made during the course of respondent’s allocution and *914 there is no way for the court to ascertain whether respondent’s former attorney discussed that consequence of the admission with respondent and his parents prior to the acceptance of the admission.
While Family Court Act § 321.3 does not require the court to advise a respondent of the loss of youthful offender eligibility in any future criminal prosecution resulting from a finding that respondent committed a designated felony act, the court nevertheless must ensure that respondent and his or her parents are fully aware of this significant consequence which flows from such an admission. The obligation to ensure that a guilty plea is made knowingly, intelligently, and voluntarily is an affirmative obligation which is imposed upon the court by the Constitution (People v Ford, 86 NY2d at 402-403; Boykin v Alabama, 395 US 238, 243-244 [1969]), and it transcends the specific statutory provisions concerning a juvenile allocution which must be observed prior to the acceptance of respondent’s admission under Family Court Act § 321.3. Therefore, because there is no indication that respondent was ever advised that he would be ineligible for youthful offender treatment in any future criminal prosecutions resulting from his admission to a designated felony act, this court cannot conclude that his waiver of rights was knowing, intelligent and voluntary. Respondent’s admission to having committed acts constituting the crime of robbery in the first degree, a designated felony act, is therefore infirm.
Finally, this court has concerns about the nature of the parental guidance and support afforded to this respondent in this proceeding. The statute places great emphasis upon participation of the parent or guardian in the juvenile’s decision to waive constitutional and statutory rights in a delinquency proceeding (Family Ct Act § 321.3 [1] [admissions]; § 305.2 [3] [notification to parent or guardian that child has been taken into custody by police officer]; § 305.2 [7] [police to advise parent or guardian of child’s rights before questioning]; § 341.2 [parent or guardian to be present at fact-finding hearing under this article]; cf. CPL 140.20 [6] [notice to parent or guardian of person arrested as juvenile offender]). The statutory scheme anticipates that the parent or guardian be present at critical junctures following a child’s arrest and that the parent be present in court to provide the juvenile with guidance and support (Matter of Julian B., 125 AD2d 666, 669-670 [1986] [Kooper, J., concurring]; Matter of Jennifer M., 125 AD2d 830, 831 [1986]; Matter of Bree J., 183 AD2d 675 [1992]; Matter of *915 James OO., 234 AD2d 822, 822-823 [1996], lv denied 89 NY2d 812 [1997]; Matter of Anthony L., 262 AD2d 51, 52 [1999]; Matter of Javier L., 272 AD2d 474 [2000]; Matter of Michael L., 285 AD2d 466 [2001]).
However, the record in this case does not provide this court with any assurance that respondent was provided with parental guidance and support. The transcript of the respondent’s admission indicates that respondent and his corespondent brought the victim’s chain, the proceeds of the robbery, to respondent’s home where the chain may have ended up in the possession of respondent’s mother or in the possession of her boyfriend. In addition, respondent’s father, who is estranged from his mother, indicated that the mother has had trouble controlling the respondent recently, a fact which is corroborated by the report prepared by the Department of Probation and the report of Dr. Frank of the mental health services clinic. Moreover, while this court paroled the respondent to his father’s custody after he made his admission, when respondent was evaluated by the mental health services clinic respondent alleged that his father had been utilizing corporal punishment upon him, including the use of a belt. Respondent’s disclosure so concerned Dr. Frank, a psychologist with significant experience in Family Court proceedings, that Dr. Frank made a report to the State Central Register of Child Abuse and Maltreatment (see, Social Services Law § 413 [1]; §§ 415, 422). Indeed, respondent’s allegations of excessive corporal punishment against his father resulted in the court removing respondent from his father’s home. Under these circumstances, there is no assurance that respondent has been provided with the parental guidance and support which the statute contemplates, nor does it appear that respondent’s parents are in a position to provide such support and guidance in the immediate future. Accordingly, this court will appoint a guardian ad litem on respondent’s behalf prior to any further proceedings upon this petition (CPLR 1202).
Accordingly, it is hereby ordered that respondent’s motion to withdraw his admission to having committed an act constituting the crime of robbery in the first degree (Penal Law § 160.15 [3]) is granted for the reasons stated herein, and the petition is reinstated for further proceedings.

. Family Court Act § 320.2 (3) provides that “[t]he initial appearance may be adjourned for no longer than seventy-two hours or until the next court day, whichever is sooner, to enable an appointed law guardian or other counsel to appear before the court.”

. Neither defense counsel nor the Assistant Corporation Counsel requested that the court cure the error in its statement concerning the potential length of placement or the nature of that placement.

. Respondent’s mother voluntarily exited the courtroom at about this time so she was not present while counsel conferred with her son.

. Family Court Act § 321.2 (3) is designed to permit a respondent to make an admission to a lesser included offense or an admission to one or more counts in a petition which charges multiple crimes (Besharov and Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 321.2, at 198). The statute provides that “[wjhere the petition charges more than one crime in separate counts a respondent may, with the consent of the court and the appropriate presentment agency, enter an admission to part of the petition or a lesser included crime upon the condition that such admission constitutes a complete disposition of th[ose] allegations in the petition which are determinable at a fact-finding hearing.”

. Respondent had been primarily residing in the home of his mother, Susan P., at the time of the incident charged in the petition. In the course of the proceedings conducted on May 20, 2003 the court learned that respondent’s mother may have been in possession of the proceeds of the robbery to which respondent entered his admission. It was also alleged that respondent was beyond his mother’s control and that she was not providing him with proper guardianship and supervision.

. The dispositional alternatives upon a finding of juvenile delinquency in accordance with Family Court Act § 352.1 (1) are set out in Family Court Act § 352.2. Those dispositional alternatives are (i) conditional discharge; (ii) probation; and (iii) placement of the respondent. The court may also adjourn the proceedings in contemplation of dismissal prior to the entry of an order of disposition directing one of the dispositional alternatives contained in Family Court Act § 352.2 (see, Family Ct Act § 315.3 [1]; Besharov and Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 352.2, at 423).

. The Appellate Division has held that an appeal from an order of disposition based upon a claim that the allocution pursuant to Family Court Act § 321.3 (1) was defective must be preceded by a motion to withdraw the admission before the trial court (Matter of Brandon S., 305 AD2d 609 [2d Dept 2003]).

. A juvenile who commits a designated felony act is a juvenile delinquent (Family Ct Act § 301.2 [1]; Matter of Thomas RR., 64 NY2d 1062, 1063 [1985]; Matter of Natasha C., 80 NY2d 678, 680 [1993]), and is not criminally responsible for the act because he or she is an infant (Family Ct Act § 301.2 [1] [a]; Penal Law § 30.00 [1]). However, some acts which would constitute designated felony acts may constitute juvenile offenses for which criminal liability attaches (Penal Law § 30.00 [2]; § 10.00 [18]; CPL 1.20 [42]). Family Court does not have original jurisdiction to hear cases involving juvenile offenses (Matter of Raymond G., 93 NY2d 531, 534-535 [1999]; Matter of Elizabeth R., 243 AD2d 427 [1997], appeal dismissed 92 NY2d 843 [1998]).

. The designated class A felony acts are murder in the first and second degrees, kidnapping in the first degree, and arson in the first degree committed by a person 13, 14, or 15 years of age (Family Ct Act § 301.2 [9]).

. The sentences which may be imposed upon a youthful offender are codified in Penal Law § 60.02. Notably, “[a] youthful offender adjudication is not a judgment of conviction for a crime or any other offense” (CPL 720.35 [1]), and “[u]pon determining that an eligible youth is a youthful offender, the court must direct that the conviction be deemed vacated and replaced by a youthful offender finding” (CPL 720.20 [3]).