Matter of D.V.S. (2007 NY Slip Op 50044(U))

[*1]

Matter of D.V.S.

2007 NY Slip Op 50044(U) [14 Misc 3d 1216(A)]

Decided on January 12, 2007

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through January 17, 2007; it will not be published in the printed Official Reports.

Decided on January 12, 2007

Family Court, Nassau County
In the Matter of D.V.S., A Person Alleged to be a Juvenile Delinquent, Respondent.
xx07

JOANNE T. CURRAN, ESQ.
Deputy County Attorney, Family Court Bureau
Attorney for the Presentment Agency
PATRICIA A. SOKOLICH, ESQ.
Attorney for Respondent - D.V.S.

Richard S. Lawrence, J.
Respondent moves this Court by way of Notice of Motion to with
draw his admission with respect to this juvenile delinquency matter; and assuming that that part of the motion is granted, to restore the original petition "as it existed at the time of the admission;" and thereafter to proceed with the fact-finding hear-ing. The Presentment Agency, of course, opposes the motion to with-draw the admission.
With respect to the underlying acts alleged, the Nassau County District Attorney's Office originally charged this Respondent (Defendant in the criminal action) in the District Court of Nassau County with the offense of burglary in the first degree in violation of §140.30(2) of the Penal Law, a class B felony. Thereafter, and on May 30, 2006, a Judge of the District Court, with the consent of the District Attorney's Office, and of the Defendant's attorney, transferred this matter, for all purposes, to the Family Court.
In accordance with the order of May 30, 2006, the matter was transferred to this Court as a designated felony and this Court heard the matter on May 31, 2006, at which time a denial was entered, Respondent was remanded and the matter was set down for a series of conference dates, with the statutory times being waived. The conferences did not result in any settlement, and accordingly, a fact-finding hearing was commenced on June 23, 2006 (the statu-
tory time was waived through and including that date) and continued thereafter. On one of the additional hearing dates (July 21, 2006), a settlement was reached whereby an amended petition was filed, to include in the designated felony petition, an additional allegation of acts which, if the Respondent were an adult, would be attempted burglary in the third degree in violation of Penal Law §§110/140.20, a class E felony (and not a designated felony). An admission was then made to paragraph 4b of the amended petition (attempted burglary in the third degree), and this case was set down for a probation investigation and report for July 31, 2006.
Thereafter, a mental health forensic report was ordered and submitted to this Court, along with the probation report, all of which recommend residential placement to address the many needs of this Respondent.
On September 8, 2006, upon receipt of all of the reports, this Court advised it was ready to follow the recommendation of the probation department and the mental health expert, and adjudicate the Respondent a juvenile delinquent with respect to his admission, and on consent placement was to be for 18 months through the New York State Office of Children and Family Services for a specific placement at Berkshire Farms. In addition, and as part of that disposition upon the current matter, the prior probation of this Respondent, with respect to a prior juvenile [*2]delinquency matter
(disposition date of July 21, 2005) would be vacated. Although the Respondent consented to this disposition of placement, the Respondent's aunt and legal guardian did not consent to the pro-
posed disposition. At that time, this Court granted a motion schedule to the parties to address the issue of the Respondent's announced intention to withdraw his admission. In view of the fact that transcripts relevant for two different dates were necessary, Respondent's counsel advised that it would take quite some time to secure those transcripts, and the motion date was adjourned accord-ingly, with all times chargeable to the Respondent.
Regarding the withdrawal of an admission, Family Court Act §321.4(2) states:
At any time prior to the entry of a finding under
section 352.1 the court in its discretion may per-
mit a respondent who has entered an admission to
the entire petition or to part of the petition to
withdraw such admission, and in such event the
entire petition as it existed at the time of the
admission shall be restored.
The admission was made and the allocution taken on July 21, 2006. The Respondent attaches as his Exhibit B a copy of the tran-
script of the minutes of that proceeding. In relevant part, that
transcript shows the following (all pages and line numbers refer to the transcript of that date): initially and as set forth in the transcript, the Court thoroughly reviewed with the Respondent and his custodial person, his right to continue with the fact-finding hearing or in the alternative to make an admission, and thoroughly reviewed the dispositional alternatives available to the Court on a future date. Thereafter, the Court thoroughly allocuted the Respondent with respect to an act which, if the Respondent were an adult, would be attempted burglary in the third degree. Immediately after the allocution, the following colloquy ensued:
THE COURT: Regarding what you told me, D.,
the fact that you have said you do not want to con-
tinue with this hearing and you want to make this
deal and from what you told me, nobody forced you
to say I don't want to continue with the trial and
that is what you did?
MR. S.: No.
THE COURT: Are you doing this freely, and will-
ingly and voluntarily?
MR. S.: Yes, sir.
THE COURT: Aunt, regarding what we are doing
today, it's my understanding you discussed this with
D. and the attorney, Ms. Sokolich. You also do not
want the trial to continue for D. and you also are
[*3]
agreeing to this deal; is this correct?
MS. B.: I will agree if that is what
he wants, yes.
THE COURT: Have any threats or promises been
made to you?
MS. B.: No.
THE COURT: Are you doing this freely and will-
ingly and voluntarily?
MS. B.: Yes.
(Trans. p. 15, l. 21 - p. 16, l.19)
The sole basis upon which the Respondent's instant application rests, is an allegation that the Respondent and his custodial person apparently thought, or believed, that the disposition would be probation, rather than placement, and they further allege that a promise was made by the Deputy County Attorney that subsequent to the admission, he would be released to his aunt. Specifically, the Respondent himself, in his supporting affidavit, alleges as follows:
7. On July 21, 2006, I was brought to the
courthouse so that the Fact Finding Hearing could con-
tinue. Before my case was called by the Judge, there
was a discussion with the Deputy County Attorney,
Joanne Curran, wherein she suggested that if I took a
plea to Attempted Burglary, the case would be over and
I could go home. When my case was called, the Law
Guardian, PATRICIA A. SOKOLICH, told Judge Lawrence
that there was a possibility of a plea in this matter.
See transcript, dated July 21, 2006, pg 4, 13-23,
attached herein as Exhibit "B".
8. Judge Lawrence then left the courtroom and
there was further conversation about my taking a
plea to Attempted Burglary in the Second Degree. We
again talked to the Deputy County Attorney and she
said that if I pled guilty to the attempt charge,
thatthis hearing would be over, and she would rec-
ommend that I go home. That was what I believed to
be true when I accepted the plea.
9. I would not have made the Admission if I
[*4]
had known that the Deputy County Attorney was not
allowed to make a recommendation that I be sent home,
and that the disposition of my case depended on infor-
mation obtained in my Probation Report; and that the
final decision as to what would happen to me would
be made by Your Honor, at a Disposition Hearing. I
did believe at the time I made the Admission, that
I would be put back on probation and allowed to go
home.
10. I made the Admission to the Amended Peti-
tion, based on what I mistakenly believed to be a
promise by the Deputy County Attorney that I would
be able to go home. I respectfully request that I
be allowed to withdraw my Admission and to continue
with the Fact Finding Hearing.
The Court notes that there is no allegation or suggestion of any kind whatsoever, that this Court ever made any promise to the Respondent regarding a proposed disposition, nor in fact did the Court ever do so. Respondent himself refers to the alleged promise by the Deputy County Attorney as "a possibility" only (paragraph 7 of his supporting affidavit) and that if he "pled guilty" [ie. made an admission] that the Deputy County Attorney "would recommend that I go home" (paragraph 8 of his supporting deposition). Again, even if this were true, Respondent himself admits that it would only be a "recommendation" to the Court, which of course is not binding on the Court whatsoever.
Furthermore, and as set forth in the transcript of July 21, 2006, this Court thoroughly reviewed all of the dispositional alternatives, and in fact specifically told the Respondent that, regarding those alternatives available to the Court on the dispo-
sition date: "[T]his is what will happen to you. It will be one of these. I don't know which." (Trans. p.6, l.24 - p.7, l.1.) The Court then went through all of the dispositional alternatives, and concluded by saying: "And it will be one of those on the dispo-
sition day, [the] what happens to D. [day]." (Trans. p.8, l.21 - 22.)
A very thorough allocution was taken, and the Court specifi-cally asked the Respondent whether anyone had forced him to settle this case and not continue with the fact-finding hearing (he answered no) and that he was doing this "freely, willingly and vol-
untarily" (he answered yes). (Trans. p.15, l.21 - p.22, l.5.)
The Court then addressed the custodial person, the aunt, and asked her the same questions, as to whether any threats or promises were made to her (she answered no) and whether she was doing this
freely, willingly and voluntarily (she answered yes). (Trans. p.16, l.6 - 19).
It is only now, when the Respondent is met with the fact that the dispositional recommendation is that he be placed for 18 months, that he now alleges that he did not have a correct understanding, and that his admission was based solely upon an alleged promise by the Deputy County Attorney as to the fact that he would be immediately released to his aunt and, [*5]apparently, that there would be no placement at the time of disposition. It should be stressed that the Deputy County Attorney adamantly denies that she made any such promise to the Respondent or his aunt.
The question of whether a Respondent should be permitted to withdraw his plea rests in the sound discretion of the trial court, and hearings are granted only rarely. People v D'Adamo, 281 AD2d 751 (3d Dept 2001); People v Davis, 250 AD2d 939 (3d Dept 1998); and Criminal Procedure Law §220.60(3).
Furthermore, so long as the trial court adequately allocuted the Respondent in accordance with statutory and constitutional requirements, and the Court did not improperly require the Respon-dent to incriminate himself, the admission will stand, and this is even so where the sequence of the allocution may not have been in any particular order, as "incrimination" does not attach until the Court accepts the plea, (Matter of Leon T., 23 AD3d 256 (1st Dept 2005); or where the defendant has not specifically acknowledged committing every element of the crime, so long as he provided a factual admission for each element (People v Seeber, 4 NY3d 780 (2005)); or where there was a discrepancy as to the site of commission of the crimes (People v Turner, NYLJ May 14, 2004, p. 23, col. 1).
In addition, it has been held (in an Article 10 case) that where an application was made months following a party's sworn admission in court, and where the allegations were inconsistent with the sworn admission allocution, that the admission would stand and the application to vacate the admission was denied. In the Matter of Cadejah AA v Otsego County Department of Social Services, 2006 NY Slip Op 8849 (3d Dept 2006). As stated by the court: "it was incumbent upon petitioner to demonstrate that her admissions supporting Family Court's findings were not knowingly made or to otherwise show good cause' to vacate the order." Ibid at page 2.
Likewise, where a defendant freely admitted the facts under-lying his crime and pled guilty, it was held that the County Court properly exercised its discretion in denying defendant's motion to withdraw his plea on the grounds that it was not voluntary and
intelligently entered. People v Lee, 2006 NY Slip Op 8288 (3d Dept 2006).
The leading case in this area is People v Frederick, 45 NY2d 520 (1978), which has been cited no less than 370 times. In that matter, the Court of Appeals affirmed the Appellate Division, which in turn had affirmed the Supreme Court, where the trial court refused to grant the defendant an evidentiary hearing to determine whether or not he was induced to plead guilty because of an off-the-record promise regarding sentencing. The defendant alleged that he was induced to plead guilty by his attorney's repre-sentations that the court promised to sentence him in accordance with the prosecutor's recommendation; the Court of Appeals stated at page 524 that if in fact that were the case, that the defendant should have been allowed to withdraw his plea, "for it is well settled that a guilty plea induced by an unfulfilled promise either must be vacated or the promise honored." The court went on to state that there was not even a suggestion that this defendant was not given an adequate opportunity to present his contentions, and that only after consultation with his attorney and a detailed explanation by the court, did the defendant plead guilty.
There is, therefore, no basis for assuming that
defendantwas not cognizant of the legal implica-
tions and personal repercussions of his action.
[*6]
Absent a showing that defendant's plea was baseless,
the Judge to whom the motion is addressed must be
entitled to rely on the record to ascertain whether
any promises, representations, implications and the
like were made to the defendant...
[T]he dispositive factor in this case is the need
for finality which must be accorded dispositions
by guilty plea in order to secure these acknow-
ledged benefits. Only rigorous adherence by the
courts to a policy of affording guilty pleas
a great measure of finality will immunize plea
negotiations from indiscriminate potshots [sic].
As previously noted, the court took painstaking
measures to insure that the defendant fully under-
stood the consequences of his guilty plea. Further,
the court informed defendant, in emphatic terms,
that no promises were being made concerning the
sentence defendant could receive. If the court had
indeed assured defendant's counsel that it would
follow the prosecution's sentence recommendation
during an off-the-record bench conference, it
was incumbent upon defendant's attorney to place
that promise, in unmistakable terms, on the
record....[V]acatur of defendant's plea on this
ground would serve to undermine the integrity
of plea negotiations. Public policy mandates
that any remnants of the clandestine atmosphere
of the plea negotiating process be eliminated.....
Since the record is totally destitute of any
further promises, the Judge properly viewed the
defendant's contentions as unfounded. Hence, no
hearing was required.
A defendant will not be heard to challenge his
guilty plea when the minutes of the plea are
unequivocal and refute any contention of an off-
the-record promise. (Ibid at pp. 525-526.)
This case (People v Frederick) is virtually identical to the matter at bar. In fact, it may be argued that Frederick is an even more compelling case from the defendant's point of view, because the sentencing promise was apparently made by a judge, other than the sentencing [*7]judge, and the judge who allegedly made the promise was then deceased.
Another leading case, also from the Court of Appeals, is People v Alexander, 97 NY2d 482 (2002) which affirmed a decision of the Appellate Division, which in turn affirmed a judgment of the Supreme Court. In Alexander, the defendant attempted to withdraw his Alford plea, upon the basis that he was not competent to enter a guilty plea. The Court of Appeals held that the trial court was able to access firsthand whether the defendant was alert and knowledgeable enough to voluntarily plead guilty. Further, under oath, the defendant told the sentencing court that after consulting with counsel, he understood the nature of the proceedings and that his guilty plea entailed a waiver of various rights. The Court of Appeals, citing People v Taylor, 65 NY2d 1 (1985), stated, at page 485:
It follows that a motion to withdraw a guilty
plea will not be granted merely for the asking,
for as we have observed in another context, a
guilty plea generally "marks the end of a crim-
inal case and is not a gateway to further liti-
gation." 
Again, People v Alexander, is strikingly similar to the matter at bar.
Furthermore, it has been held that a Court is not bound by any plea agreement between the parties, and that its disposition is based upon the evidence presented. In Re Jamar W., 269 AD2d 103 (1st Dept 2000).
See also People v Woods, 12 Misc 3d 1164A (Sup. Ct of New York, Bronx Cty. 2006) in which a defendant, who had been a "veteran offender," claimed that he did not knowingly and voluntarily plead
guilty. The trial court held that the defendant could not withdraw
his guilty plea, which was made only after consultation with his attorney and subsequent to a detailed explanation by the trial court.
The case law clearly indicates that a motion to withdraw a guilty plea (with few exceptions) may only be made where the court has not properly allocuted the defendant or respondent, or upon a claim of ineffective counsel, or upon a claim of mental illness.
See, for example, In the Matter of George C., 89 Misc 2d 532 (Family Ct of New York, New York Cty, 1977), where the court held there was a "deprivation of effective counsel;" In the Matter of Perry O., 232 AD2d 225 (1st Dept 1996), in which the Family Court did not advise the respondent of the dispositional alternatives; In the Matter of Joseph G., 196 Misc 2d 904 (Family Court of New York, Queens Cty 2003) in which the court did not properly explain to the defendant the ramifications of a guilty plea; People v King, 20 AD3d 580 (3d Dept 2005) in which the court did not find that counsel was ineffective, and denied a withdrawal of the admission; People v Thomas, 25 AD3d 879 (3d Dept 2006), appeal den'd 6 NY3d 853 (2006), in which the defendant moved to withdraw his guilty plea upon the grounds that his attorneys had been ineffective in their representation and that he had been pressured into entering a plea by the "whole court system." The court stated at page 880:
Whether to allow a defendant to withdraw his
[*8]
guilty pleas is a matter committed to the
discretion of the trial court (citation omitted).
Generally, a guilty plea may not be withdrawn
absent some evidence or claim of innocence, fraud
or mistake in its inducement (citations omitted).
Furthermore, where a defendant has been fully
informed of the rights he is waiving by plead-
ing guilty and proceeds to admit the acts con-
stituting the crime, a subsequent protestation
of innocence which is not substantiated by any
evidence is generally insufficient to support
a request for vacatur of the plea (citations
omitted).
Prior to entry of his plea, defendant engaged
in a colloquy with Supreme Court in which he
freely and voluntarily admitted the facts under-
lying the crime to which he intended to plead
guilty, [and] acknowledged and waived his consti-
tutional rights.
People v Thomas should be compared with the matter at bar, in which the Respondent and his aunt were specifically asked as to whether any "promises" were made to them by anybody, and they each replied in the negative. It was only after the Respondent and his aunt realized that Respondent would not be immediately released, and that the recommendation for disposition was placement, that they first alleged a promise by the Deputy County Attorney to "recommend" release (a promise which the Deputy County Attorney vehemently denies). Under the applicable law, as set forth in this decision, such allegations are not sufficient to allow for any hearing on any issue raised in this matter, and certainly not sufficient to rise to the level of vacating the Respondent's admission.
See also People v Rahsaan Williams, 2006 NY Slip Op 09961 (3d Dept 2006) in which the Court found a conflict of interest regarding defendant's counsel, and that counsel had misinformed the defendant; People v Bethea, 19 AD3d 813 (3d Dept 2005) in which the court denied vacatur of the plea based upon an alleged lack of meaningful representation by counsel and upon the defendant's alleged lack of factual sufficiency of the plea allocution; and People v Polite, 259 AD2d 566 (2d Dept 1999), appeal den'd 93 NY2d 1025 (1999) in which the Appellate Division affirmed the trial court's denial of a motion by defendant to vacate his plea. As the Second Department stated in People v Polite, at page 567:
The minutes of the plea proceeding show that the
defendant entered knowing and voluntary pleas,
and there is nothing in the record to suggest
that the pleas were improvident or baseless.
[*9]
The defendant's allegations of innocence were
insufficient to warrant a hearing, as the record
discloses that the defendant freely admitted
that he shot each victim (citations omitted).
The defendant's contention that he was coerced
by his attorney is belied by his statement
during the plea allocution that he had not been
forced into pleading guilty.
The matter at bar is very similar to People v Polite. Respondent in the matter at bar knowingly and voluntarily gave his
admission, and freely admitted as to the acts which he had done, which would constitute a crime if he were an adult. He and his aunt freely admitted during the allocution that the admission was being made without any promises by anybody as to further proceedings or what would happen in those further proceedings, and that the admission was being made freely, willingly and voluntarily.
Lastly, another juvenile delinquency case is directly in point; see In the Matter of Michael P., 50 AD2d 856 (2d Dept 1975) in which a respondent, at the time of disposition, was placed for a three year period. In affirming the Family Court, Queens County, the Appellate Division stated:
[t]he Family Court did not abuse its discretion
in refusing to allow appellant to withdraw his
guilty plea. Appellant entered the plea in the
hope he would receive a commitment to an open-
setting institution. No promises had been made
to him. He did not receive the commitment he
desired. This is not a proper basis for allow-
ing a withdrawal of a guilty plea" (Ibid).
This Court finds nothing different in the matter at bar, from the posture of respondent In the Matter of Michael P., supra.
In addition to all of the cases cited above, there are a legion of other cases regarding withdrawal of a guilty plea or an admission; however, when such applications are granted, they are virtually all based upon claims of ineffective counsel, failure of the trial court to sufficiently allocute the defendant or
respondent, or upon a claim of mental illness, none of which are alleged in this matter. Here, the Respondent and his aunt candidly admit that, at most, the Deputy County Attorney stated she would "recommend" release. Clearly, this allegation, even if true, together with the Court's unambiguous allocution, is not sufficient to grant a withdrawal of the admission, nor even to allow a hearing.
Since nowhere in the instant motion does the Respondent, his aunt nor counsel allege any of these three grounds, and the sole ground alleged is a purported promise by the Deputy County Attorney to "recommend" release, the Court finds that such an application is insufficient to grant [*10]the relief the Respondent seeks.
Accordingly, the motion by Respondent to vacate his plea is denied in each and every respect.
This constitutes the Findings, Decision and Order of the Court.
Dated: Westbury, New York
January 12, 2007